

# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS
# EL PASO, TEXAS

---

No. 08-24-00054-CV

---

Judson Motors Ltd. d/b/a Universal Toyota, Appellant

v.

Jane Doe, Appellee

---

On Appeal from the 45th District Court
Bexar County, Texas
Trial Court No. 2023CI03866

---

## MEMORANDUM OPINION[1]

This case asks whether an arbitration provision in a car sales agreement extends to tort

claims arising from a salesman's alleged theft of sexually explicit photos and videos from a

---

[1] This case was transferred from the Fourth Court of Appeals pursuant to a docket equalization order issued by the Supreme Court of Texas. *See* Tex. Gov't Code Ann. § 73.001. We apply the precedent of that court to the extent it conflicts with our own. *See* Tex. R. App. P. 41.3.

customer's phone. We conclude it does not. We therefore affirm the trial court's order denying the motion to compel arbitration.

## I. FACTUAL BACKGROUND

Appellee Jane Doe[2] filed suit alleging invasion of privacy and related torts arising from unauthorized access to her cellular phone. She named Conor Griffin and Appellant Universal Toyota as defendants.[3] Doe alleged she visited Universal Toyota's dealership on June 3, 2022, to trade in a vehicle. During the transaction, Universal Toyota salesman Conor Griffin asked to use Doe's phone to view financial statements relevant to credit approval. While holding the device, he allegedly browsed through intimate photos and videos, texted himself at least fourteen photos and three videos, deleted the text thread, returned the phone, and then proceeded with the sale. The sales agreement included an arbitration provision.[4]

Two weeks later, Doe discovered the deleted messages in her iCloud account synced with her phone. She alleged that Universal Toyota's management initially dismissed the issue despite her providing proof of Griffin's misconduct and that she suffered post-traumatic stress and mental anguish. She sued Griffin and Universal Toyota for intrusion on seclusion, breach of fiduciary

---

[2] Because the suit involves a matter that is sensitive and personal in nature, Appellant is identified by a pseudonym to protect her identity. *See* Tex. R. App. P. 9.9. Here, we further note the parties entered into a confidentiality agreement and protective order in part to protect Doe's identity and in part to protect some business material produced in discovery.

[3] Doe obtained a default judgment against Griffin over Universal Toyota's objection. He is not a party to this appeal.

[4] The car sales agreement signed by Doe includes two arbitration provisions. One states that the transaction involves interstate commerce and another states that the Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq., applies. Doe separately notes that Universal Toyota pleaded that the Texas Arbitration Act (TAA) applied and suggests that the agreement is not valid under the TAA for lack of an attorney's signature. Under the FAA, an arbitration agreement that is valid under general principles of contract law and involves interstate commerce is enforceable. 9 U.S.C. § 2. Doe does not dispute either of these requirements or argue that Universal Toyota's pleading alters or waives the arbitration agreement. Moreover, she concedes in her brief that a valid arbitration agreement exists. Given we affirm the trial court's denial of arbitration, we neither reach nor address Doe's contention about the TAA's applicability. *See* Tex. R. App. P. 47.1.

duty, Deceptive Trade Practices Act violations, harmful access by computer, fraud, and fraud by nondisclosure. Against Universal Toyota, she asserted vicarious liability and negligent hiring, supervision, and retention. Universal Toyota denied liability and moved to compel arbitration under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16. Doe responded that (1) no applicable arbitration agreement existed; (2) the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 (EFAA), 9 U.S.C. §§ 401–402, exempted her from forced arbitration; (3) her claims fell outside the scope of the alleged arbitration agreement; and (4) Universal Toyota waived arbitration.[5]

After a hearing, the trial court denied the motion to compel arbitration. This appeal followed.

## II. STANDARD OF REVIEW

We review the denial of a motion to compel arbitration for abuse of discretion, deferring to the trial court on factual determinations supported by the evidence and reviewing legal determinations de novo. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). To prevail on a motion to compel arbitration, the movant must prove (1) a valid and enforceable arbitration agreement exists, and (2) that the claims fall within the scope of the agreement. *Id.* "Whether the claims in dispute fall within the scope of a valid arbitration agreement and whether a party waived its right to arbitrate are questions of law, which are reviewed de novo." *Id.*

---

[5] Before Universal Toyota filed an amended motion, Doe argued that Universal Toyota had not properly proved up the existence of an authenticated arbitration agreement. After Universal Toyota filed authenticated documents, Doe conceded it established the existence of an agreement but continued to contest whether the claims being made in her suit fell within the scope of the agreement.

### III. ISSUES ON APPEAL

Universal Toyota presents a single broad issue including three sub-issues: (1) Are Doe's claims covered by the parties' arbitration agreement? (2) Does the EFAA apply to Doe's claims? and (3) Was there a waiver of arbitration? Doe responds that no arbitration agreement exists that covers her claims, that the EFAA bars compelled arbitration, and that Universal Toyota waived arbitration by its litigation conduct. It is undisputed that a sales agreement exists between the parties and it contains an arbitration clause. The real question before us is scope. Because we determine the alleged claims fall outside the scope of the clause, we do not reach the remaining sub-issues regarding the EFAA and waiver. *See* Tex. R. App. P. 47.1.

### IV. APPLICABLE LAW ON SCOPE

#### A. Burden

A party seeking to compel arbitration bears the initial burden to establish both a valid arbitration agreement and that the claims at issue fall within its scope. *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 525 (Tex. 2015). Universal Toyota acknowledges that it bears this burden.

#### B. Presumption and ambiguity

Universal Toyota invokes a presumption of arbitrability. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 783 (Tex. 2006). The presumption is founded in federal and state policy. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 302 (2010). The policy is to enforce arbitration agreements "according to their terms, no more, no less," *In re Olshan Found. Repair Co., LLC,* 328 S.W.3d 883, 889 (Tex. 2010), and is "not about fostering arbitration," *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022). The presumption applies "only where a validly formed and enforceable arbitration

4

agreement is ambiguous about whether it covers the dispute at hand." *Granite Rock*, 561 U.S. at 301. "Absent some ambiguity . . . it is the language of the contract that defines the scope of disputes subject to arbitration." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). Texas decisions are consistent. In *D. Wilson*, for example, the Texas Supreme Court recognized the presumption, found no ambiguity, and determined the clause's scope based on its plain terms. 196 S.W.3d at 783; *see also Wagner v. Apache Corp.*, 627 S.W.3d 277, 282–83 (Tex. 2021); *Rachal v. Reitz*, 403 S.W.3d 840, 850 (Tex. 2013); *In re Rubiola*, 334 S.W.3d 220, 225 (Tex. 2011) (orig. proceeding).

Universal Toyota argues the arbitration clause is clear and it raises no concern about ambiguity. We therefore determine scope by the agreement's plain terms. *See Ridge Nat. Res., L.L.C. v. Double Eagle Royalty, L.P.*, 564 S.W.3d 105, 124 (Tex. App.—El Paso 2018, no pet.) (ambiguity as to arbitration provision must be properly raised on appeal).

### C.  Governing rule (stand-alone tort test)

To determine whether a tort claim falls within a broad arbitration clause, Texas courts distinguish between tort claims that are "so interwoven with the contract that [they] could not stand alone" and tort claims that are "completely independent of the contract and could be maintained without reference to the contract." *Valero Energy Corp. v. Wagner & Brown, II*, 777 S.W.2d 564, 566 (Tex. App.—El Paso 1989, writ denied); *Pennzoil Co. v. Arnold Oil Co.*, 30 S.W.3d 494, 498 (Tex. App.—San Antonio 2000, no pet.); *see Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 271 (Tex. 1992) (citing *Valero*, 777 S.W.2d at 567) (compelling arbitration where evidence supporting "factually intertwined" tort claims was necessary to establish related contract claim).

In the forum-selection context, the Texas Supreme Court has formalized the same functional inquiry: the court first identifies the substance of the claims made and the language of the arbitration clause, then asks whether the existence or terms of the agreement are operative facts

bearing a causal relationship to the dispute. *Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 439 (Tex. 2017). A tort claim falls outside a broad clause only "if the facts alleged in support of the claim stand alone, are completely independent of the contract, and the claim could be maintained without reference to the contract." *Id.* at 440 (citing arbitration cases); *Henry v. Cash Biz, LP*, 551 S.W.3d 111 (Tex. 2018) (citing *Pinto* in arbitration case). In short, the task is to decide whether the claims as alleged can be proved without reference to the agreement.

## V. ANALYSIS

Our analysis proceeds in four steps: examining the arbitration clause at issue, identifying the gravamen or essential allegations supporting Doe's claims, considering how the governing rule has been applied in cases with similar facts, and then applying the rule to the present facts.

### A. The arbitration provision

The arbitration provision contained within the sales agreement provides:

> Any controversy [or] claim arising out of or relating to the Motor Vehicle Retail Installment Sales Contract/Purchase Order or Lease Contract or the breach thereof shall be settled by binding arbitration[.]

Universal Toyota characterizes this clause as broad. Texas courts have traditionally considered "arising out of or relating to" language as broad and signifying expansive reach. *Bonded Builders Home Warranty Ass'n of Texas v. Rockoff*, 509 S.W.3d 523, 529, 532–33 (Tex. App.—El Paso 2016, no pet.) (citing *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998)).

### B. Doe's factual allegations

Each of Doe's seven causes of action—intrusion on seclusion, harmful access by computer, negligence, breach of fiduciary duty, fraud, fraud by nondisclosure, and violations of the DTPA— are supported by allegations that a Universal Toyota employee accessed her phone, texted copies

6

of sexually explicit photos and videos to himself, then deleted the texting thread before returning the phone. In her brief, Doe characterizes her overarching claim as theft and further describes the theft as concealed. Notably, Doe does not allege that the theft violated any term of the sales agreement. There is no allegation that the agreement addressed theft or access to a customer's personal electronic device.

Doe and Universal Toyota both maintain that Griffin's alleged conduct constituted Unlawful Disclosure or Promotion of Intimate Visual Material under Texas Penal Code § 21.16, commonly known as the revenge porn statute. Generally, the statute prohibits a person from intentionally disclosing intimate visual materials where the depicted person: "(1) has not consented, (2) has a reasonable expectation of privacy, and (3) is identified." *Ex parte Fairchild-Porche*, 638 S.W.3d 770, 784 (Tex. App.—Houston [14th Dist.] 2021, no pet.). Doe, however, chose not to plead unlawful disclosure as a basis for relief. *See* Tex. Civ. Prac. & Rem. Code Ann. § 98B.002 (providing civil remedy for violation of Tex. Penal Code § 21.16). Instead, she pleaded harmful access by computer, Tex. Civ. Prac. & Rem. Code Ann. § 143.001 (providing civil remedy for violation of Tex. Penal Code § 33.02), along with six other tort claims based on the alleged concealed transfer. The record contains no allegation or evidence that Griffin disclosed the photos or videos to anyone other than himself. We conclude the gravamen of Doe's claims is not disclosure but concealed theft of intimate visual material from her phone.

The parties cite no Texas case addressing theft of intimate images in the course of a retail sale. Therefore, we consider analogous lines of authority before applying the governing test to this novel scenario.

7

### C. Analogous authorities

Before applying the test, we pause to examine the authorities on which the parties rely. These cases fall into four recurring fact patterns that overlap but are largely distinct from this case. Because no Texas decision addresses the alleged theft of private images during the sales process, we treat these as guideposts rather than controlling authority.

#### (1) Theft of customer property

Tort claims based on theft of customer money or property have been held arbitrable where the agreements addressed the use or handling of customer property. *See Frost Bank v. Steven A. Davis, M.D., P.A.*, No. 04-20-00522-CV, 2021 WL 2446210, at *1 (Tex. App.—San Antonio June 16, 2021, no pet.) (mem. op.) (claims of theft of funds in bank account could not be maintained without reference to deposit agreement that provided "all details of how funds are handled"); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Wilson*, 805 S.W.2d 38, 39 (Tex. App.—El Paso 1991, no writ) (fraudulent use of client money); *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 754 (Tex. 2001) (orig. proceeding) (wrongful repossession and failure to repair damage to collateral); *Cash Biz, LP*, 551 S.W.3d at 115 (wrongful debt-collection based on the lender's manner of handling bad checks and collecting on loans).

#### (2) Workplace sexual assault claims

Another line of cases involves sexual assault and sexual harassment in the workplace. Texas courts previously reached different results as to whether they could be maintained without reference to the employment agreement. *Compare Prudential-Bache Sec., Inc. v. Garza*, 848 S.W.2d 803, 807 (Tex. App.—Corpus Christi 1993, orig. proceeding) (claims against company based on coworkers' sexual assault and failure to correct the impression that the plaintiff had AIDS did not require reference to employment agreement), *with IFMG Sec., Inc. v. Sewell*, No. 13-10-

00235-CV, 2011 WL 5515528, at *3 (Tex. App.—Corpus Christi Nov. 10, 2011, no pet.) (mem. op.) (sexual harassment by supervisor acting in supervisory capacity).[6] Such claims are now covered by the EFAA.

### (3) Retail personal injury claims

A third set of analogous cases concerns slip-and-falls and similar incidents during retail transactions. Some decisions have held such claims are not arbitrable because they could be maintained even if the plaintiff were a stranger to the contract. *Pawn Tx, Inc. v. Jimenez*, No. 04-24-00766-CV, 2025 WL 2158599, at *5 (Tex. App.—San Antonio July 30, 2025, pet. filed) (mem. op.) (injury from falling object in pawn shop); *Cash Am. Pawn LP v. Meza*, 653 S.W.3d 340, 343 (Tex. App.—Houston [14th Dist.] 2022, no pet.) (slip-and-fall in pawn shop); *Rocha v. Marks Transp., Inc.*, 512 S.W.3d 529, 535 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (non-signatory spouse's slip-and-fall at dealership not arbitrable because the claim did not rely on the contract).

### (4) Data-theft claims

Courts from other jurisdictions applying the FAA have examined data-theft claims similar to Doe's. In a closely analogous case, a Florida appellate court held that a salesman's theft of personal information from a purchaser's credit application during a vehicle sale was not arbitrable where none of the allegations in the complaint required reference to or interpretation of any part of the sales agreement. *King Motor Co. of Fort Lauderdale v. Jones*, 901 So. 2d 1017, 1019

---

[6] Doe relies on *Jones v. Halliburton Co.*, 583 F.3d 228, 233 (5th Cir. 2009) (sexual assault not arbitrable where company policies did not "explain" incident). *See also Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1220 (11th Cir. 2011) (sexual assault of cruise ship employee where a "passenger could have brought these same claims against the cruise line based on virtually the same alleged facts"); *Anderson v. Hansen*, 47 F.4th 711, 718–19 (8th Cir. 2022) (sexual assault at work conference); *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1103 (9th Cir. 2023) (alleged wiretapping of delivery drivers). Notably, each of these were split decisions in which dissenters concluded that maintaining the claims did require reference to specific terms set forth in the plaintiffs' employment agreements.

(Fla. Dist. Ct. App. 2005). By contrast, federal courts have compelled arbitration where the governing contract specifically addressed the collection, storage, or protection of customer information.[7]

With those guideposts in mind—and noting the absence of a Texas decision directly on point—we apply the governing rule to the arbitration clause and factual allegations in this record.

### D. Application

Under the governing rule, we ask whether adjudicating Doe's tort claims requires reference to the sales agreement containing the arbitration clause. It does not.

First, the circumstantial fact that the alleged theft occurred at the time the sales agreement was negotiated is not sufficient to compel arbitration of Doe's theft-related claims; nor is the fact that she would not have come into the dealership "but for" the sales agreement. *Pinto*, 526 S.W.3d at 440; *Hou-Scape, Inc. v. Lloyd*, 945 S.W.2d 202, 205–06 (Tex. App.—Houston [1st Dist.] 1997, no writ). To encompass a tort claim, an arbitration agreement must do more than simply bring the parties together or provide an occasion for the alleged tort.

Second, analogous cases point away from arbitrability. Unlike prior cases involving theft of customer property or data, there is no allegation that the sales agreement, or the customer relationship created by or evidenced by the agreement, extended to sharing access to her intimate photos and videos to Universal Toyota. *See Frost Bank*, 2021 WL 2446210, at *1. Although Doe momentarily handed over her personal device to Griffin with the understanding that it was necessary to complete the sales transaction, she believed he was merely viewing financial

---

[7] *See Hamm v. Capsule Corp.*, No. 22-cv-05435 (JSR), 2022 WL 4468028, at *4–5 (S.D.N.Y. Sept. 26, 2022) (unauthorized release of medical information by online pharmacy); *Carvell v. Am. Express*, No. 22-cv-05105, 2023 WL 4931291, at *2 (N.D. Ill. Aug. 2, 2023) (unauthorized credit report access); *Sifuentes v. AT&T*, No. 1:23-cv-834, 2024 WL 3391147, at *1 (W.D. Mich. July 5, 2024) (data breach related to phone service); *Maldini v. Marriott Int'l, Inc.*, 140 F.4th 123, 136–37 (4th Cir. 2025) (data breach involving hotel membership program).

documents. The agreement itself is silent as to the use of Doe's phone, and Universal Toyota has not pointed to any terms of the agreement that are relevant to her claims. *See id.*

As noted, the factual allegation supporting each of her claims is that Griffin accessed and transferred intimate photos and videos without permission. It is not necessary for Doe to establish what he *was* permitted to see under the sales agreement or in the context of negotiating a sales agreement. That may be relevant or helpful in presenting the facts, but it is not a fact that must be introduced to prove her claims. We therefore conclude that Doe could maintain her claims without reference to the existence or terms of the sales agreement.[8]

We hold Doe's tort claims fall outside the scope of the arbitration clause. Universal Toyota's sole issue is overruled.[9]

## VI. CONCLUSION

Because Doe's claims are independent of and can be maintained without reference to the sales agreement, they fall outside the scope of the arbitration provision. The trial court did not err in denying Universal Toyota's motion to compel arbitration. We affirm.

---

[8] We clarify one last point. The parties disagree as to whether our scope determination bears on Doe's vicarious liability claim. Doe contends that Universal Toyota's position that Griffin's conduct fell outside the scope of his employment amounts to its admission that the arbitration agreement does not apply. Universal Toyota replies that Doe mischaracterizes its argument and that scope of employment is irrelevant to the question of arbitrability. We agree the questions are distinct. As *Jones* explains, asserting that an employee acted outside the *scope of employment* does not determine whether a dispute falls within the *scope of an arbitration agreement*. 583 F.3d at 233, 238, 239. Because no question about the scope of Griffin's employment was raised in this appeal, we express no opinion on that issue or question.

[9] Universal Toyota raised the issue of scope in this appeal, and did not raise the "third-order issue" of whether the agreement had delegated scope to the arbitrator, or an issue of whether the parties nonetheless agreed to adjudication. *Coinbase, Inc. v. Suski*, 602 U.S. 143, 148 (2024). These are distinct issues subject to different standards. *TotalEnergies E&P USA, Inc. v. MP Gulf of Mexico, LLC*, 667 S.W.3d 694, 701 (Tex. 2023). Courts presume the parties intended for courts to resolve both existence and scope of the agreement, rather than split those issues between different forums. *Jody James Farms, JV v. Altman Group, Inc.*, 547 S.W.3d 624, 631 (Tex. 2018). In any event, the question of who decides the issue of scope is not jurisdictional and may be waived by failure to raise it in the trial court or on appeal. *Haddock v. Quinn*, 287 S.W.3d 158, 171 (Tex. App.—Fort Worth 2009, pet. denied).

11

GINA M. PALAFOX, Justice

November 6, 2025

Before Salas Mendoza, C.J., Palafox and Soto, JJ.